IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:17-cv-01638-RBJ

GARY R. BUTLER,
An individual,

    Plaintiff.

    v.

TONY G. SPURLOCK, SHERIFF, DOUGLAS COUNTY, STATE OF COLORADO
In his official and individual capacity.

    Defendants

_____

**FIRST AMENDED COMPLAINT AND JURY TRIAL REQUEST**
_____

Gary R. Butler, by and through his counsel, Steven L. Murray, Murray Law, LLC, asserts the following allegations and claims against the Defendants, Tony G. Spurlock, Douglas County Sheriff, in his official and individual capacity.

## PARTIES

1. Mr. Butler is a United States citizen and resident of Douglas County, Colorado.

2. Tony Spurlock is the Sheriff of Douglas County. Sheriff Spurlock is sued in his official and individual capacity.

3. The claims against Sheriff Spurlock in his official capacity are effectively claims against the Douglas County Sheriff's Office. For purposes of this official capacity

claim, the Douglas County Sheriff's Office is referenced herein, at times, as the Sheriff's Office.

4. The Sheriff's Office is local government agency within the County government of Douglas County. [Sheriff's Office].

5. The primary business location for Defendant Spurlock, in his official and individual capacity, is Castle Rock, Colorado.

## JURISDICTION AND VENUE

6. This Court has jurisdiction of this action pursuant to 28 U.S.C. Sections 1331, 1343 (a) (3) (4), 1367, and 42 U.S.C. Sections 1983 and 1988 (a) (b) (c).

7. The claims in issue arose in Douglas County, Colorado, and the surrounding areas. All claims arose in the Judicial District of this Court.

8. Venue is proper in this Court pursuant to 28 U.S.C. Section 1391(b) (c), 42 U.S.C. Section 1983, and 42 U.S.C. Section 1988(a).

## NATURE OF THE CASE

9. Mr. Butler served as a Deputy Sheriff with the Sheriff's Office from 1991 through July 10, 2015, a period of 24 years.

10. Mr. Butler, as a Deputy Sheriff, had an exemplary record of performance and public service, as well as an unblemished disciplinary record.

11. Defendant Sheriff Spurlock and Defendant Sheriff's Office discharged Mr. Butler from employment on July 10, 2015. Mr. Butler was 66 years of age when he was discharged.

12. Pursuant to the Due Process Clause of the Fourteenth Amendment of the United States Constitution, Mr. Butler had liberty interest in his good name and reputation in the context of his continued employment as Deputy Sheriff.

13. Mr. Butler, pursuant to the Due Process Clause of the Fourteenth Amendment of the United States Constitution and 42 U.S.C. Section 1983, seeks legal and equitable relief against the Defendants for infringing and violating Mr. Butler's liberty interests in employment.

14. Mr. Butler alleges a promissory estoppel claim against Defendant Sheriff Spurlock, in his official capacity- the Sheriff's Office. This claim is asserted pursuant to this Court's supplemental jurisdiction in 28 US.C. Section 1367.

## GENERAL ALLEGATIONS

15. In 1975, Mr. Butler was convicted of manslaughter, a felony, in the State of Utah. [Utah matter]. Mr. Butler was 26 years of age at the time of the conviction.

16. On January 12, 1988, a Utah District Court issued an Order concerning Mr. Butler's case.

17. The Utah District Court provided: (a) upon entry of the Order, Mr. Butler "shall be deemed ***judicially pardoned***…."; (b) "***he may hereafter respond to any inquiries relating to conviction of crimes as though they never occurred***;" (c) all records in the custody of the Court or in the custody of any other court agency or official are sealed; and (d) inspection of Mr. Butler's records may only be made by the request of Mr. Butler and upon order of the court. [Emphasis supplied] [Utah Court Order].

18. In 1991, Mr. Butler began service in the County Sheriff's Office as a volunteer Reserve Deputy Sheriff.

19. At all times in Mr. Butler's 24-year employment history as a Deputy Sheriff, Mr. Butler followed the law, as set forth in a Utah Court Order.

20. At the time Mr. Butler began his service as Deputy Sheriff in 1991, he did not engage in any wrongful conduct by failing to disclose the Utah matter to the Sheriff's Office, because the Utah Court Order expressly provided: (a) upon entry of the Order, Mr. Butler "shall be deemed judicially pardoned…."; (b) "he may hereafter respond to any inquiries relating to conviction of crimes as though they never occurred; and (c) all records in the matter were ordered sealed.

21. By the Utah Court Order, Mr. Butler, to the best of his knowledge and belief, was restored all rights and privileges that he may have lost because of the Utah matter.

22. At the time Mr. Butler began his service as Deputy Sheriff in 1991 and continuing to the present, Mr. Butler: (a) has been a lawfully registered voter in Colorado; (b) has enjoyed all rights and privileges of citizenship; and (c) is not legally encumbered, burdened, or restricted in the exercise of any rights and privileges because of any aspect of the Utah matter.

23. In 1996, Mr. Butler began serving as a full-time, paid Deputy Sheriff.

24. The County promoted Mr. Butler to Sergeant.

25. Pursuant to the urging of the Sheriff's Office, Mr. Butler managed the Deputy Sheriff's Association, in addition to his full-time Deputy Sheriff's position. In this

4

role, Mr. Butler increased the Association's funding from approximately $100,000 to over $950,000.00 dollars. Moreover, Mr. Butler created a Fallen Officer's Fund for the Sheriff's Office.

26. Mr. Butler has strong ties to the Douglas County community. Mr. Butler has lived with his wife and family in Douglas County since 1987. Mr. Butler and his family own property in Douglas County. Mr. Butler's children attended public school in the Douglas County community.

27. During Mr. Butler's service as Deputy Sheriff, David Weaver served as: (a) Douglas County Undersheriff from a period on or before 2003-2005; and (b) Douglas County Sheriff from 2005-2014. Mr. Weaver was Sheriff Spurlock's immediate predecessor as Sheriff.

28. During Mr. Weaver's tenure as Undersheriff, Mr. Butler, in 2003, disclosed the following matters to Mr. Weaver; (a) the Utah matter and the substance of the Utah Court Order; (b) his judicial pardon; (c) the fact the Utah Court Order provided that he could lawfully respond to any inquiries of his criminal history in the negative; and (d) Mr. Butler's application process with the Sheriff's Office.

29. Upon Mr. Weaver beginning his service as Sheriff, in 2005, Mr. Butler continued to discuss the matters in the aforementioned paragraph with Mr. Weaver.

30. Pursuant to the Utah Court Order, Mr. Butler was not under any duty to disclose the Utah matter to David Weaver and/or the Sheriff's Office.

31. At the time Mr. Butler initially disclosed the matters to Undersheriff Weaver, Undersheriff Weaver effectively responded to Mr. Butler, "you have more than proven yourself to me."

32. Following Mr. Butler's disclosures to Mr. Weaver, Mr. Weaver: (a) never expressed to Mr. Butler any concern or problem with any aspect of the Utah matter or the manner in which Mr. Butler had dealt with the Utah matter; and (b) neither ordered nor suggested that Mr. Butler take any action concerning the relationship of the Utah matter to Mr. Butler's continued employment as a Deputy Sheriff.

33. Following Mr. Butler's disclosures to Mr. Weaver, Mr. Butler continued to receive salary increases and favorable performance evaluations.

34. Mr. Butler was never disciplined concerning his disclosures to Mr. Weaver, the Utah matter, or his conduct in his application process with the Sheriff's Office.

35. In 2014, David Weaver was elected to serve as one of three Commissioners on the Douglas County Board of Commissioners. Mr. Weaver served on the County Board from 2014 through April 1, 2018, at which time he resigned to accept the Presidential appointment as United States Marshall for the District of Colorado.

36. In July 2015, Sheriff Spurlock and the Sheriff's Office approached Mr. Butler concerning the Utah matter.

37. In July 2015, in response to Sheriff Spurlock and the Sheriff's Office raising the issue of the Utah matter, Mr. Butler informed Sheriff Spurlock and the Sheriff's Office that he: (a) had been judicially pardoned; (b) the terms of the Utah Court Order; and (c) the substance of his prior disclosures to Mr. Weaver.

38. At all times herein, Defendants Sheriff Spurlock and the Sheriff's Office, intentionally refused to acknowledge and consider the Utah Court Order. The Defendants did not place any credence, and/or give any weight, to the fact that Mr. Butler's conduct was in strict compliance with the Utah Court Order.

39. At such point, Defendants Sheriff Spurlock and the Sheriff's Office, without considering the Utah Court Order, Mr. Butler's performance and disciplinary history, and Mr. Butler's prior disclosures to Mr. Weaver, promised Mr. Butler that he could retire and there not be any further investigation and the matter would not become public in any manner.

40. Defendants Sheriff Spurlock and the Sheriff's Office did not honor their promises to Mr. Butler. Defendants did not permit Mr. Butler to retire and provided false and misleading allegations about Mr. Butler into the public domain.

41. Mr. Butler, upon learning that the Defendants did not honor their promises to him, provided Sheriff Spurlock a copy of the Utah Court Order.

42. Defendants, through the actions of Sheriff Spurlock, discharged Mr. Butler from employment. Mr. Butler received the employment termination letter on July 10, 2015. Mr. Butler was 66 years of age at the time of his discharge.

43. Mr. Butler, upon receiving the termination letter from Sheriff Spurlock, requested the Defendant Sheriff's Office and Defendant Spurlock, on two occasions, for a hearing.

44. Mr. Butler requested a hearing from: (a) Robert McMahon, Captain of Internal Affairs; and (b) Sheriff Spurlock, through his personal secretary.

45. The Sheriff's Office, Captain McMahon, and Sheriff Spurlock, denied Mr. Butler's requests for a hearing.

46. Defendants Sheriff Spurlock and the Sheriff's Office communicated a false, misleading, and unnecessarily damaging narrative concerning to Mr. Butler to the public and employees in the Sheriff's Office. The Defendants' were false, misleading, inaccurate, and damaging to Mr. Butler because the statements failed to state: (a) the judicial pardon granted to Mr. Butler; (b) the Utah Court Order permitting Mr. Butler to respond to any inquiries relating to conviction of crimes as though they never occurred; (c) Mr. Butler's disclosures to Sheriff Weaver; (d) Sheriff Weaver's reactions to Mr. Butler's disclosures; and (e) the fact the County Board had constructive knowledge of Mr. Butler's disclosures to Mr. Weaver; and (f) Mr. Butler's performance and disciplinary record as Deputy Sheriff.

47. Defendant Spurlock's stated, concerning Mr. Butler, "He committed a felony. He committed a heinous crime, in my opinion. He should have disclosed that information to us when he was applying." [August 11, 2015 television interview and internet posting on CBS Channel 4; August 11, 2015 internet posting on Channel 11, Colorado Springs].

48. Upon information and belief, the Sheriff's Office and Defendant Spurlock made statements similar to the aforementioned statement, in other public forums.

49. Sheriff Spurlock communicated false and/or misleading damaging information to employees of the Sheriff's Office, in a written memorandum dated August 11, 2015.

50. Upon information and belief, this message reached between 300-400 individuals employed by and/or associated with the Sheriff's Office and the County.

51. Sheriff Spurlock's August 11, 2015 message referenced Mr. Butler's separation as "specifically involving a past manslaughter conviction that occurred over 40 years ago that was not disclosed to this office." Also, the message states: "an internal investigation was conducted, and Sgt. Gary Butler was terminated."

52. Sheriff Spurlock's August 11, 2015 message stated: "as you know my administration prefers to keep internal affairs investigations confidential to the degree possible."

53. Defendants Sheriff Spurlock and the Sheriff's Office did not keep the matter concerning Mr. Butler's discharge and the reasons confidential. Instead, the County and Sheriff Spurlock communicated false, misleading, and severely damaging information, concerning Mr. Butler, to the media and the workforce.

54. Defendants Sheriff Spurlock and the Sheriff's Office prohibited employees of the Office, Mr. Butler's prior friends and colleagues, from contacting Mr. Butler during work hours and personal off-duty hours.

## CLAIMS FOR RELIEF

## FIRST CLAIM

### [Violation of Due Process, Liberty Interest]

55. Mr. Butler incorporates and realleges all previous allegations of the Complaint.

56. This claim is asserted against Defendant Sheriff Spurlock, in his official and individual capacity, two separate Defendants.

57. Defendants are persons under 42 U.S.C. Section 1983.

58. The Fourteenth Amendment of the United States Constitution provides that no state may deprive a person of life, liberty, or property without due process of law.

59. Mr. Butler was deprived of a liberty interest without due process of law.

60. As a public employee, Mr. Butler has a liberty interest in his good name.

61. Mr. Butler's liberty interest was a clearly established constitutional right of which a reasonable person should have known.

62. Defendants acted under color of state law and deprived Mr. Butler of his liberty interest in continued employment as a Deputy Sheriff.

63. Mr. Butler made two requests to Defendant Spurlock and the Sheriff's Office for a hearing. Defendants' denied Mr. Butlers' requests for a hearing

64. Defendants, through the actions of Sheriff Spurlock and the Sheriff's Office, infringed upon Mr. Butler's liberty interest because: (a) they made statements that impugned Butler's good name, reputation, honor, or integrity; (b) the statements made were false; (c) the statements were made during the course of termination and foreclosed other employment opportunities; and (d) the statements were published to the media, the public domain, and the employees of the Sheriff's Office.

65. Defendants statements, through the actions of Sheriff Spurlock and the Sheriff's Office,  were false because the statements did not account for the following

information of which Defendants Spurlock and the Sheriff's Office had specific knowledge, and the Defendant County Board had constructive knowledge: (a) the full relief provided to Mr. Butler through the Utah Court Order; (b) Mr. Butler had specifically disclosed the Utah matter and his conduct in the application process to David Weaver; (c) Mr. Weaver did not take any action or direct Mr. Butler to take any action concerning the Utah matter; (c) Mr. Weaver, upon receiving the disclosures from Mr. Butler, complimentary and supportive of Mr. Butler's service as Deputy Sheriff;  (d) Mr. Dave Weaver has served on the County Board since 2014; (e) since Mr. Weaver's election to the County Board, the County Board has   had constructive knowledge of the Utah matter, Mr. Butler's handling of the matter, Mr. Butler's disclosures concerning the Utah matter, Mr.  Weaver's conduct in response to Mr. Butler's disclosures; and (f) Mr. Butler had a stellar performance record and unblemished disciplinary record as Deputy Sheriff.

66. Defendants statements, through the actions of Sheriff Spurlock and the Sheriff's Office, concerning Mr. Butler's termination, created the false impression that: (a) Mr. Butler engaged in wrongdoing when he did not disclose the Utah matter at the time of his hiring in 1991; and (b) that Mr. Butler had been convicted of a felony that he was hiding the matte by failing to disclose the matter; rather than the accurate characterization; to-wit: Mr. Butler had been judicially pardoned and had received a restoration all rights and privileges of a citizen.

67. Defendants statements were published, carried by print, television and internet news media outlets.

11

68. When Mr. Butler's liberty interest was infringed upon, he was entitled to receive an adequate name-clearing hearing – an opportunity to be heard at a meaningful time and in a meaningful manner.

69. The Defendants violated Mr. Butler's due process rights by failing to provide a hearing.

70. Mr. Butler was deprived of a liberty interest in his good name and reputation without due process when Defendants made public the fact that he was terminated for serious misconduct.

71. Defendant Sheriff Spurlock is not entitled to qualified immunity. Sheriff Spurlock was in a position to provide due process. Mr. Butler's right to a name-clearing hearing in these circumstances was clearly established.

72. Defendant Sheriff Spurlock was the final policy maker with respect to the employment termination of Deputy Sheriffs. The Defendants acted pursuant to a custom and policy, reflected in the actions of Defendant Spurlock and the Sheriff's Office.

73. Defendants Spurlock, and the Sheriff's Office are liable because Sheriff Spurlock deprived Mr. Butler of his liberty interest without due process.

74. Defendants' actions were taken in malicious, willful, wanton, reckless indifference to, deliberate indifference to, and/or reckless disregard of Mr. Butler's rights as guaranteed by 42 U.S.C. Section 1983 and the Fourteenth Amendment to the United States Constitution.

75. As a direct, foreseeable, and proximate result of the intentional unlawful conduct complained of herein, Mr. Butler suffered injuries, damages and other losses.

12

Mr. Butler's damages include severe damage to his personal and professional reputation, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and the potential and/or actual loss of wages, earnings, income, diminution of earning capacity, actual and/or potential retirement benefits, loss of employment, future pecuniary losses, and other damages to be determined at trial.

## SECOND CLAIM

### [Doctrine of Promissory Estoppel-Re: Right to Retire & Privacy]

76. Mr. Butler reasserts and incorporates all prior allegations and paragraphs of this Complaint as if fully set forth herein.

77. This claim is asserted against the Defendant Sheriff Spurlock in his official capacity.

78. In July 2015, Sheriff Spurlock, upon learning of the Utah matter, made promises to Mr. Butler.

79. Sheriff Spurlock promised Mr. Butler that he could retire from employment and the Utah matter and the investigation of Mr. Butler, conducted by Sheriff Spurlock, would remain confidential.

80. Sheriff Spurlock's promises were of the nature that he should reasonably have expected would induce action or forbearance by Mr. Butler.

81. Sheriff Spurlock was aware that he had the authority to make promises to Mr. Butler, a Deputy Sheriff in his chain of command, concerning the terms and conditions of employment.

82. Sheriff Spurlock's promises to Mr. Butler addressed matters of apparent and severe importance to Mr. Butler. These matters included Mr. Butler's reasonable desire to avoid: (a) being discharged from years of employment; (b) having Sheriff Spurlock disclose the Utah matter and the investigation to Mr. Butler's colleagues in the Sheriff's office, Douglas County government, and the general public; and (c) having Sheriff Spurlock handle the Utah matter, the investigation, and Mr. Butler's discharge and employment status, in a manner that: (i) caused Mr. Butler to suffer embarrassment and personal and professional damage; and (ii) jeopardized future employment opportunities for Mr. Butler.

83. Mr. Butler relied upon Sheriff Spurlock's promises by: (1) not resigning; (2) not immediately accepting other full-time employment opportunities; and (3) planning to retire in reliance on receiving the benefits of Sheriff Spurlock's promise that all matters in issue would remain confidential.

84. Mr. Butler's reliance on Sheriff Spurlock's promises was reasonable.

85. Sheriff's Spurlock's promises were unique to Mr. Butler.

86. Sheriff's Spurlock possessed the authority to make the promises to Mr. Butler and to honor the promises.

87. Mr. Butler was aware of Sheriff Spurlock's authority to make the promises and honor the promises.

88. Mr. Butler suffered the following detrimental consequences because of his reliance Sheriff Spurlock's promises and Sheriff Spurlock's failure to honor the promises.

(a) Sheriff Spurlock discharged Mr. Butler; denying him the opportunity to retire.

(b) Mr. Butler, upon receiving the termination letter from Sheriff Spurlock, requested a hearing and Sheriff Spurlock denied Mr. Butler's two requests for a hearing.

(c) Sheriff Spurlock did not keep the Utah matter, Mr. Butler's discharge, employment status, and/or the investigation, confidential.

(d) Sheriff Spurlock communicated false, misleading, and unnecessarily damaging information, concerning Mr. Butler, to the public and employees in the Sheriff's Office. The statements were false, misleading, inaccurate, and damaging to Mr. Butler because the statements failed to state, consider, or reference: (i) the judicial pardon granted to Mr. Butler; (ii) the Utah Court Order permitting Mr. Butler to respond to any inquiries relating to conviction of crimes as though they never occurred; (iii) Mr. Butler's disclosures to former Sheriff Dave Weaver; (iv) Sheriff Weaver's reactions to Mr. Butler's disclosures; and (v) Mr. Butler's performance and disciplinary record as Deputy Sheriff.

(e) Sheriff Spurlock stated publicly, concerning Mr. Butler: "He committed a felony. He committed a heinous crime, in my opinion. He should have disclosed that information to us when he was applying." [August 11, 2015 television interview and internet posting on CBS Channel 4; August 11, 2015 internet posting on Channel 11, Colorado Springs].

(f) Sheriff Spurlock communicated false and/or misleading damaging information to employees of the Sheriff's Office, in a written memorandum dated August 11,

15

2015, in which he: (i) referenced Mr. Butler's separation as "specifically involving a past manslaughter conviction that occurred over 40 years ago that was not disclosed to this office"; (ii) stated: "an internal investigation was conducted and Sgt. Gary Butler was terminated;" and (iii) stated "as you know my administration prefers to keep internal affairs investigations confidential to the degree possible."

(g) Sheriff Spurlock did not keep the internal affairs investigation concerning Mr. Butler confidential.

(h) Sheriff Spurlock prohibited employees of the Sheriff's Office, following Mr. Butler's discharge, from contacting Mr. Butler during their work and personal off-duty hours.

(i) Mr. Butler lost three employment opportunities because of negative information that Sheriff Spurlock had conveyed about Mr. Butler in the public domain.

89. The Defendant's failure to honor their promises to Mr. Butler caused him to suffer personal and professional damage, including the loss of three employment opportunities.

90. The promises created by the Defendant's actions are binding because justice can only be avoided by enforcement of the promise.

91. Mr. Butler's damages, injuries, and losses include severe damage to personal and professional reputation, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and the potential and/or actual loss of wages, earnings, income, diminution of earning capacity, actual and/or potential retirement

benefits, loss of employment, future pecuniary losses, and other damages to be determined at trial.

## REQUEST FOR RELIEF

WHEREFORE, Mr. Butler respectfully requests this Court to enter judgment in his favor and against Defendants on all claims for relief asserted in this First Amended Complaint and Request for Jury Trial, and in addition, for the following relief:

(1) To enter a judgment in favor of Mr. Butler and against Defendant Sheriff Spurlock, in his official and individual capacity, on the First Claim for Relief, finding the finding the acts of the Defendants constitute an unlawful and intentional violation of Mr. Butler's right to due process of law, in depriving Mr. Butler his liberty interests in employment, pursuant to the Due Process Clause of the Fourteenth Amendment of the United States Constitution and 42 U.S.C. Section 1983.

(b) To enter a judgment in favor of Mr. Butler and against Defendant Sheriff Spurlock, in his official capacity, on the Fourth Claim for Relief, finding the acts of the Defendant concerning the promises made to Mr. Butler and Defendant's failure to honor the promises, constitute an unlawful and intentional breach of the binding and enforceable promises created between the Defendant Sheriff Spurlock, in his official capacity, and Mr. Butler.

(c) To award Mr. Butler, pursuant to 42 U.S.C. Section 1983, and all laws pursuant to which he is entitled to said relief, the remedies of damages for back pay, front pay, loss of benefits, actual monetary damages, loss of wages, salary, retirement

17

contributions, all loss of present and future income, and all loss of monetary damages to which he is entitled. 42 U.S.C. Section 1983.

(d) To award Mr. Butler attorney fees and costs pursuant to 42 U.S.C. Section 1988 (b)(c), 42 U.S.C. 1983, and all other laws pursuant to which he may be entitled to such relief.

(e) To award Mr. Butler all monetary damages and remedies to which he is entitled for Defendant Sheriff Spurlock, in his official capacity, violating the doctrine of promissory estoppel.

(f) To award Mr. Butler pre-judgment and post-judgment interest at the appropriate rate provided by law.

(g) To direct the Defendants to take such affirmative relief steps as are necessary to ensure that the effects of the Defendants" unlawful employment practices are eliminated and do not continue to affect Mr. Butler's employment opportunities.

(h) To award Mr. Butler all other legal and equitable relief, to which Mr. Butler is entitled pursuant to any law, that this Court deems just, equitable, and proper.

## JURY TRIAL REQUEST

Pursuant to Fed.R.Civ.P. 38 (a)(b)(c), and 42 U.S.C. Section 1983, and all applicable laws providing for a right to trial by jury, Mr. Butler seeks a jury trial of all claims and issues in this action.

Dated: April 25, 2018

Respectfully submitted this 25rd day of April 2018.


*s/Steven L. Murray*_____
Steven L. Murray
Murray Law, LLC
1888 Herman Street, Suite 200
Denver, CO 80203
Direct Telephone: 303-396-9952
Email: steven@smurraylaw.com

**Plaintiff's Attorney**

## CERTIFICATE OF SERVICE

The undersigned certifies that on April 25, 2018, FIRST AMENDED COMPLAINT AND JURY TRIAL REQUEST, was filed with the Clerk of the Court using the CM\ECF system, which will send notification to all counsel entered in the CM/ECF system for this civil action; and via email to the following non-CM/ECF participants:

<u>Plaintiff</u>

Gary Butler


*s/Steven L. Murray*_____
Steven L. Murray